Good morning everyone. Our first case of the day is Carter v. City of Wauwatosa. Ms. Bertrand. Good morning. May it please the court. This morning I would like to allocate 15 minutes of my argument to this section and save five for rebuttal. This story starts with a family on their way to get ice cream after church. And shortly before they're about to turn into Culvers, they are stopped by the Wauwatosa Police Department. Three additional squads arrive. They have their guns drawn. One charges an AR-15. Ms. Bertrand, we're familiar with the facts. If your time is short, it would help if you moved to the legal arguments. Thank you. I'd like to address three sections of the briefs today and not rehash what's already been discussed. The first will be Rule 56's application pre-trial. The second will be the Batson issues at trial and the jury instructions that the plaintiffs proffered and that were not allowed. Between August 10, 2022 and the final pre-trial, the facts didn't change, the law didn't change. And the August 10, 2022 summary judgment order was correct. The trial court left to the jury. Doesn't everything depend here on whether there was reasonable suspicion for a stop? I mean, you've made a constitutional claim, okay? This is not a state court negligence claim or anything. It's a constitutional claim. If there's reasonable suspicion for the stop, that's it. There's no constitutional claim. So maybe the judge should have done what he did sooner and said we're going to have a short trial to determine whether or not there was reasonable suspicion for the stop. But he didn't grant summary judgment to any of the defendants. He just, as you got closer to trial, said we're going to bifurcate this trial and we're going to try the constitutional issue. And if there is no constitutional issue, there's no case. What's wrong with that? Twofold, Your Honor. First, regarding the bifurcation, the court specifically did not bifurcate it. So what? What difference does that make? The court precluded the plaintiffs and precluded the jury from hearing the totality of the circumstances surrounding this stop. No, he didn't. No, no. The circumstances and the facts are very simple. A pedestrian flags down a police officer and says he thinks he just witnessed a robbery in progress in an automobile. The police officer then executed a traffic stop, brought the young man out of the back seat, put him in his squad car, questioned the passengers in the front seat. They all confirmed that there was no robbery and in five minutes he let everybody go. And I understand the guns were drawn and those sorts of things. But the jury was asked, was there reasonable suspicion for the stop? And they answered yes. Then there's no constitutional claim. Your Honor, these were factual issues and there are issues of fact surrounding this that the jury was not allowed to consider. So, for example, whether or not the tip happened in the first place was an issue. That was an issue of fact because there was no recording of this statement. The officer himself was equivocal about what he could remember regarding this test. And you cross-examined him on that, right? Yes, I did. And the jury believed him. The trial court at trial adopted this court's summary that this tip happened, that the tip said it was a robbery in progress, which that's contrary to what Mr. Anderson had testified in this deposition. But didn't you argue that to the jury? That's all a jury determination. Yes, it is a jury determination. I think you'd have a different case if the judge had expanded upon the issues in the weeks before trial, said we're just going to try, we're going to bifurcate, we're just going to try one issue. And then two weeks before trial he said, no, we're going to try the whole thing. But here he just contracted and said we're just going to try this case in parts. I don't know what Rule 56 has to do with that at all. Because he didn't just contract it. He stated on the day of trial, immediately before opening statements, that he was dismissing the chief of police and the three assisting officers, and that included the Monell claim. He dismissed them. And that is clear when the defense says to the court, under Rule 54, are you dismissing them? And then asks, are they now going to be subject to the rule of exclusion as witnesses? And the judge says they will be subject to the rule of exclusion. So at that point they are no longer parties. And it is at that point that the case becomes a Rule 56 issue. And the court contracted it, but he also, I agree with you that he contracted the issues, but he also contracted the consideration here that this stop didn't happen in a vacuum. And that this stop occurred consistent with the Wauwatosa Police Department's established pattern of stopping Blacks. No, it didn't. A jury found that the officer had reasonable suspicion for the stop. That is it. It's not a constitutional claim. You had a jury trial on that issue. That is the penultimate issue of the 1983 case. If there's reasonable suspicion for the stop, that's it. Your Honor, I also would note that there was an issue of fact regarding whether or not this simply was a Terry stop or an actual arrest. And the plaintiffs sought this court's pattern instruction under Rules Instruction 7.06 in the comment that allows for an instruction where then there's an issue of fact to give the jury the opportunity to determine whether or not this was a simple Terry stop or an arrest that required probable cause. I think we can all agree that the officers did not have probable cause. Okay, but if it wasn't a Terry stop, it wasn't an arrest either. Oh, correct. A Terry stop comes first. Correct. So the jury was asked, was it a Terry stop? And they said, I'm sorry, the jury was asked, was there reasonable suspicion for a Terry stop? The answer is yes. That presumes it was a Terry stop and not an arrest. And that was an issue of fact to be determined by the jury that the trial court correctly found was a triable issue in its summary judgment order. But, Your Honor, I also would like to note that the totality of the circumstances was considerably circumscribed by the trial court. And had the jury learned that blacks in Wauwatosa are 30 times more likely to be stopped than whites, that Wauwatosa is 95% white and 60% of their stops and arrests are of blacks, the jury may have simply said, well, this one was okay. They might have said something else. But that was kept from the jury. They weren't allowed to consider that. And, in fact, the other thing I would note is that in trial, the officers consistently testified this was consistent with my training. This was consistent with policy. It wasn't. And had the jury been allowed to hear that their training does not allow them to conduct a stop like this, that they have to wait for an independent corroboration of some criminal conduct, which Cain and Vetter both state they didn't have. Cain and Vetter both testified that by the time the stop is starting, Cain doubts anything's going on that's wrong. And, in fact, Cain says, I've observed nothing other than legal conduct. They pulled over right away, no furtive movements, nothing. Vetter, the supervisor, the lieutenant on scene says, by the time I'm pulling up to this, I have my doubts. I don't think there's a robbery in progress. Yet, they pursue a high-risk felony stop, order Mr. Carter, the only black person in the car, out of the car, with their guns drawn, to his knees, handcuff him, and place him in the squad car. And even after Paulette Barr is saying, that's my grandson, what are you doing? Do you want to address the Batson claim? Sure. These are, you're just, we're not a jury. You're just making jury arguments here as far as what happened. We can't, you know, we can't find that there was not reasonable suspicion for the stopper. That's not even what you're asking us to do on appeal. Your Honor, I'm asking this court to reverse and remand this matter so that a jury can consider, A, whether or not this was a Terry stop in the first place, and B, whether or not, taking the totality of the circumstances of this stop, the officers had reasonable suspicion. As to Batson. Can I ask you a question regarding Batson when you get into this? This is very weird, by the way. I mean, I've tried a lot of cases, and this is weird as to the way this occurs with sidebar and no transcript. But what are we supposed to review? Usually, you know, if there's no transcript, there's nothing for us to review, and that means the appellant loses. And here, here's what we have to review. Here's what the judge says. All right, and given that one of the plaintiff's witnesses was a counselor, I think also is a contributing factor for both sides, whether you want the individual or don't. And so I find for the reasons that the court stated off the record yesterday, the defense has provided a race-neutral reason for having exercised a preemptory strike. That's it. That's all we have. What are we supposed to do with that? The court also has, the trial court granted the plaintiff's motion to amend the record. I agree with that, but that's as to the for-cause strike. That has nothing to do with the defendant. That is not a Batson issue. I looked at that this morning. That's 175. That's docket number 175. It has nothing to do with juror number 10. Regarding juror number 10, we also have the discussion, while the jury's deliberating, the court allows us to come back and say, make our record regarding Batson. So the damage for Batson is already done at that point. Right, but we have, so here's what happens in Batson. Once the judge asks for a race-neutral reason, then the judge determines whether or not it's a valid race-neutral reason. That's the only thing we review on appeal. That's it. We only review step three. We don't look at step one and we don't look at step two. Only three. Okay? But to the extent that's on the record, the only part that's on the record is, and given that one of the plaintiff's witnesses was a counselor, I think also is a contributing factor for both sides whether you want the individual or don't. So he's saying it's race-neutral. And as long as it's not false or outlandish, we affirm. We don't challenge the judge's credibility finding. You're asking us to say that the district judge was wrong when he found the defendant's lawyer to state a race-neutral reason that we don't want a social worker with a master's degree on this jury. Correct. And two things about this, Your Honor. First, the record is also based on the voir dire record that is, I believe, sealed. So I want to be careful. No, no. I have that, too. No, no. This is what's weird. Let me tell you. Here's what happens. The judge says we're going to do the preemptory strikes. And, Your Honor, the plaintiffs know we have an objection to one of the defense strikes. All right. I will see counsel at sidebar. Sidebar discussion back on the record. The clerk will announce the names of those jurors who have now been selected. This is totally useless to us on appeal, completely useless. It tells us nothing. Yes. I agree with that. Why don't you lose for that reason? You're the plaintiff. You're the one that's bringing the claim to us. You didn't say let's make a record, transcribe it. The next day you come back and say make a record, and the judge says, well, for the reasons I stated yesterday, and there's no, I can go on to the next page of the transcript. I would like to, if I may, Your Honor, in discussing the Batson challenge at sidebar, there was an agreement about whether or not Batson is applicable in civil matters. It clearly is, okay? The judge was wrong to say that. And the judge was wrong to say that there are two white plaintiffs. That doesn't make any difference. Your Honor, I think it does make a difference here. No, I'm saying it doesn't make any difference that there were two white plaintiffs. I agree with you on that. But I don't know that that helps you. I think it does help us because the court's telling us that whatever his findings were at the sidebar and in our conversation, kind of ex post facto, this is where he's coming from. These are fundamental legal errors that are the trial court's error, and that is the record. No one. I guess a different way to ask the same question. It seems to suggest here that the judge was under this impression that Batson challenges are reserved for African Americans. Right. Is that your understanding of the law? That is not the law. And the law is clear that any party can raise a Batson challenge, and it need not even be for someone of the same race, ethnicity. Let's say that's correct. How does that matter here if the judge says they provided a race-neutral reason that was credible? And then he goes on and makes these extracts. We'll clear this up. I mean, he makes these comments that says, well, maybe it's not relevant in civil cases, and maybe it's not as important if the plaintiffs are white. Those things, that's wrong, okay? We can clear that up in our opinion, but how does it help you here if he says one juror was struck who is a minority, the defendant provided a race-neutral reason, and that reason was credible? Because he's also telling us that this is the— Before you answer that question, can you finish the answer to my question? You said that the law allows the Batson challenge to be shared by those beyond those that are African American. What is the basis for that statement? Your Honor, I don't have the specific pinpoint site, but the case law is clear case law in this circuit and Supreme Court case law, and I believe it's discussed a little bit in Flowers v. Mississippi, but I think it's also discussed in Powers v. Ohio. So the two reasons that we have on the record that we're able to rely on, at least for purposes of Batson, was that you're white, you can't raise a Batson challenge, and the first one being for the reasons I stated yesterday, the Batson challenge is invalid. Are those the only two reasons on the record that we have for purposes of evaluating the judge's reason for not, I guess, granting the challenge that you had raised? There's also the third reason of the Batson not—the trial court inserting that Batson doesn't apply in civil cases, and then even when given the site from Leesville Concrete to the contrary, the trial court doubling down and saying, I've only seen it in criminal. So I think those are—that's what the court's telling us his legal basis is. He's not saying I've engaged in this three-part evaluation. Counsel, let me interrupt. Go ahead. Did he get to the third part? Did the trial court get to the third part? You talk about clear error in your brief, and to me this case comes down to whether or not clear error applies. Does clear error apply if he doesn't get to the third part, and did he get to the third part? Clear error applies to his findings of fact, and I would say no. He doesn't do the weighing. We don't know because we don't have a transcript. Whose fault is that? You're just asking us to make this step up as we go. There's no transcript of what happened at the sidebar. None. The trial court— Could you imagine a sentencing hearing where there's no transcript and then the parties come in here and say you should reverse? We wouldn't reverse. There's no transcript. The trial court allowed the parties to make their record on the record after the jury had been seated. The trial court did not make a record regarding its balancing of the— I believe the word is authenticity— of the asserted neutral basis. Then what do you make of this statement? Given that one of the plaintiff's witnesses was a counselor, I think also is a contributing factor for both sides whether you want the individual or don't. So he's saying given that one of your witnesses was a counselor, they don't want a counselor on the jury. That's what he said. He did say that. That's a credibility finding. What do you make of that? I would disagree that that's a credibility finding. It's simply a finding of fact that is not a correct fact. How so? This potential juror, juror 10, was not a counselor. She was a social worker. There was no additional voir dire done of her, and that would have been on the defense to request. He doesn't say she was a counselor. He says given one of your witnesses is a counselor, I think is also a contributing factor for both sides whether you want the individual or don't. Right. There's nothing about her that impacts him being a counselor. Nothing. But that's an argument for the district court. I mean, we're looking at this, is it false or outlandish? What's false or outlandish about that statement? What's false and outlandish about that statement is they claim she was a social worker and therefore struck her and that she had a graduate degree. Our foreman had an MBA. All right. Ms. Bertrand, you're out of time. I'm going to give you some time to rebuttal since we asked a lot of questions. We're going to leave it there for now. All right. Thank you. Okay. Mr. Worth. Thank you. Good morning and may it please the court. What I'm going to do is clear up a couple of the questions the court just asked, answer any questions you have and then sit down because this was a three-and-a-half-year case that ended in a jury trial and the jury took 40 minutes to find reasonable suspicion for this Terry stop. The idea that . . . Can I ask you one question here? Absolutely. If the plaintiff wins on the Batson Challenge, all we can do is remand to the district judge to make a credibility determination. That's it. We can't reverse. We can't order a new trial. We send it back to the district judge to make a credibility determination. Is there anything more that the district judge can say than given that one of the plaintiff's witnesses was a counselor, I think also is a contributing factor for both sides whether you want the individual or don't? There is not. It is a race-neutral reason in and of itself. The damage claim, to the extent there was a damage claim, involved Mr. Carter treating with a counselor who dealt with the city of Milwaukee and helped introduce him to police departments to kind of get him past this. The juror was a Master's of Social Work in Counseling for Milwaukee. Our reason that we presented was . . . What you're saying is it takes the district judge about 30 seconds to deal with this on remand, maybe less. You know Judge Stadnor, it's going to take less. To counsel, you're sitting right here. You're given the reasons. I could say, okay, I find that you provided a race-neutral reason. I find that you're making eye contact. I find that you're contemporaneously adding facts that make sense based on other jurors. I find you credible. Isn't that Step 3, and did it happen? It did not happen. I mean, I think it happened implicitly. Do you have a single case where the judge didn't move on to Step 3, where we didn't send it back for further analysis? Well, the idea is that if the concept is with respect to the third category of now I'm going to analyze whether it is outlandish or it is false on its face or it is a pretense, the court would have addressed that. The idea that as he analyzed our race-neutral reason, and it didn't even... Maybe that's my question. Was that analysis actually done? We keep talking about how quickly this could get resolved, but there's a reason in our justice system that the Batson Challenge is there and available to ensure that justice is administrated fairly and impartially. And inclusively. And so I think that's critical. I don't want to be flippant as far as why this resonates, right, this Batson Challenge and why it resonates with our country. But my question, more pointed, is did this analysis, regardless or irrespective of how quickly it can be handled, was it done in this case? The difficulty I have in answering that is that there is no record. There's no transcript. There is no transcript of what went on at the sidebar. The kinds of conversations that we're talking about here today did go on, but there is no transcript of that happening. And so when we look at the transcript, we see the judge said, well, for the reasons I said yesterday and for these two other reasons. And so if we look at those reasons, counsel, were those valid reasons? The reasons that we do have in front of us. Sure. I will represent to the court that as that was being stated, we on the defense stipulated that that was incorrect. The Batson Challenges do apply in civil juries. So if the court's concern is. And what about the race reason? These are white plaintiffs. Yeah, I think it's actually a little more than that. What he actually said is we've got white plaintiffs and a black plaintiff. We've got white jurors and jurors of color. He says, and I noted for the record that this is not a case in which there is a single plaintiff who happens to be a minority, whether Hispanic, Asian, or African American. There are also two plaintiffs who are Caucasian. So that effectively neutralizes the entirety of the application of the Supreme Court's ruling in Batson. Right. I think that the emphasis, it's a different emphasis on the word single. There isn't a single plaintiff. We are not talking about a case where there's only one plaintiff. So I understand the court's concern. And as I said, we stipulated that Batson applies to civil juries too. But we had a race-neutral reason for it. That second reason, was that reason valid, the one that I just provided? That this isn't a criminal court? Mm-hmm. It's an error. Okay. Obviously, the Batson challenge still applies. So from the court's perspective or the court's concern, well, what do we do as a reviewing court when there is neither a yea or a nay in the record? The answer is can the reason that the judge did give be reasonably interpreted? Correct. To have understood that the challenge itself was valid. And I think in this record it does. Can you give me a case where the appellate court did that, where the appellate court said you didn't move on to Step 3, you only did Step 2. The judge doesn't say, I find that your race-neutral reason wasn't pretext. I find you credible. It said the defense has provided a race-neutral reason. Isn't that Step 2? Do you have a case where the appellate court has done Step 3? I guess what I would argue is that his statement actually does encompass the third part. Can it be anything else? In the record? Can it be anything else? Can it be anything else? What is he doing at that point? The only thing to do is credibility. Maybe you can cite a case that says the United States Court of Appeals elevates form over substance. I'm not aware of any. And that would probably be the basis for. What plaintiff is asking us to do, we don't do this. Plaintiff is asking us to say, the district judge must state these magic words, colon. My credibility finding is thus. And then make a credit. We don't do that. We allow district judges to try the case. We allow district judges to make findings. And we don't elevate form over substance. And there is the inherent frustration in elements of the discussion that I know about that aren't in the record. But to respond to your question, Your Honor, the idea that analyzing both the reason and its implication and application in this trial suggests that it's obvious why the defense doesn't want a social worker working for Milwaukee to sit in a case where damages are going to be testified to by a social worker working in Milwaukee. Is there the colon, three paren, here I find? There is not in this record. The. Can I ask you a question, a different question? Sure. Yep. On the arrest issue. Yes. The way I understand Plaintiff's argument is Plaintiff is arguing that the district court was wrong that the judge to only ask the jury whether or not there was reasonable suspicion for a Terry stop. The jury should have also asked, been first asked, was it a Terry stop or was it an arrest? And then the next question would be, if it was a Terry stop, is there reasonable suspicion? If it was an arrest, was there probable cause? What's your response to that? Twofold. The first is that by the time the court got to that issue, it had the benefit of the summary judgment motions, it had the benefit of the support in favor and opposed to those summary judgment motions, and the court came to the conclusion that the issue to be tried, a rule 42 decision, if you will, that the issue to be tried is reasonable suspicion. The idea that the entire encounter took 11 minutes. Mr. Carter's time in the back of the squad car was around five minutes, and that included the time from stop to release. So it was not, he wasn't taken from the scene. So all those things were analyzed in the context of the summary judgment proceedings. And the idea that evidence was taken away from the plaintiffs on that issue is incorrect. In fact, I made sure I brought with me the judge's ruling in February, the month before the trial. He said, to be clear, plaintiffs remain free to pursue at trial the claims delineated in their complaint, muddled as they may be. Defendants' construction of plaintiffs' federal constitutional claims is what the court adopted. Plaintiffs also remain free before or at trial to submit an offer of proof as to the evidence they would like to present. Both parties remain free to raise objections and engage in motion practice. The jury instructions and verdict form will be finalized at the close of evidence. In other words, what the judge was saying is, we are going ahead with this as a Terry stop. If you develop at trial evidence that something more is going on, or if you make an offer of proof during trial that something more was going on, then we'll expand and we'll allow that to happen. There were no offers of proof in that respect. And as the court is aware, under Rule 103, that issue is now waived. So we narrow it back down to the Terry stop issue. Was there a reasonable suspicion to have stopped this vehicle upon a tip from a citizen of an in-progress armed robbery? And the jury didn't have a problem doing that. So to directly respond to your question, the ability, the rules structure was this is going to be perceived as a Terry stop case. The ability to show me something that should expand it remains yours, both in terms of development during the evidence and in terms of offer of proof. That didn't occur. It went to the jury as a Terry stop. Should we talk then about how the jury instructions came through? I know that that was one of the issues raised in Appellant's brief regarding the circuit instruction versus the one that was given here. Yeah. Part of the dynamic at the time of trial was a lot of certain things came in at the very bitter end. And obviously the argument will be jury instructions aren't finalized until the evidence is closed. So I'm allowed to say this. But the instruction that was suggested was an Eighth Circuit instruction that adds an element of investigation into a Terry stop analysis. And the difficulty with that is that there was no evidence introduced with respect to any burden of proof regarding evidentiary investigation before a Terry stop can occur. So we tried this case under Seventh Circuit rules. Nothing during the course of the evidence or the offer of proof changed it from that. And it went to the jury with that instruction, the Seventh Circuit's patent instruction on a Terry stop. I think the other instruction was the illegal firearm instruction. Yeah, that one was instruct the jury that there are certain weapons that an individual can carry legally in the car. And I think that the gist of it, I think the request for that was that the witness who observed what he thought to be a gun in the individual's hand isn't in and of itself a crime. But what he observed is him leaning through the seats to the two occupants in the front seat with something in his hand. He wasn't saying you should stop him because I think he was carrying a gun. He was saying you should stop him because I think there's an armed robbery going on. I will also tell the court that in the discussion concerning that jury instruction, we stipulated that there are certain firearms that can be carried legally in the state of Wisconsin, no jury instruction necessary. And the court advised the plaintiff's appellant's attorney, make your argument in closing. And I told the court, I will not object if they do. If they want to get up there and say, you can't stop that car because they thought they saw a gun in the middle of an armed robbery in a moving vehicle. Go ahead. So the one instruction was not a Seventh Circuit pattern instruction, but more importantly, it didn't have any evidence during the trial that was developed to support that instruction. And the other instruction was just, we'll stipulate that it's legal to carry a gun in a car. The last point we haven't touched on it much is, and it's the undercurrent here, and it hasn't been brought up as Rule 42B. That would have permitted, and what I'm hearing at least this morning from appellant's counsel is that this case was about race. And the judge didn't allow me to have that conversation in front of the jury. I understand that to be the appellant's argument, impression maybe. But I can tell you that wasn't the ruling of the court. The court basically said, I want this issue answered. This is the jury question. If you can show me, make an offer of proof, develop it through one of the police officers who will say, yeah, I was always told to stop African Americans. If you can do that, then we'll talk about expanding what we're going to bring in. But if all we're talking about is, did a witness, witness an armed robbery, ask a police officer to intervene. And the officer did. And 11 minutes later, and I'll tell you, they did go on and get their ice cream at Culver's. 11 minutes later, we have a Terry stop case. And that's what we tried. Oh, I thought you're going to throw a hard one at me. Hearing no more questions. That's all I have in mind. Okay. Thank you. Ms. Regarding. The court's question about race and being allowed to speak about it at trial. At the final pretrial. The court directly tells the parties. This case is not about race. And so something to the effect of, we won't go down that rabbit hole. At trial. So there was no opening of the door. For the plaintiffs. About discussing race and the context of this stuff. The court specifically precluded that. With regards to the other. Determinations. You just. Discussed with the defense. That's the point. The court, we did make offers of proof. The record in this case was extensive and the facts. Taken in a light, most favorable to the plaintiffs. Leading up to trial supported. An arrest. Not just a Terry stop. And supported a broader context that this case did not happen in a vacuum. And whether the, the jury would have accepted that or not. We don't know because they weren't given the opportunity. To consider it, to give you an opportunity to address. The question where he left it is. What are those facts that would have turned this into an arrest? Those facts include. The use of weapons. The drawing of the weapons to include an AR 15. The handcuffing for police officers, four separate squads, not simply one car walking up. How are you doing this afternoon? Ordering one person out of the car, placing them handcuffed to the back. In the squad car. Those all are facts consistent with an arrest and consistent with this court's pattern instruction. When the jury is being asked to determine whether or not a detention was a stop. Or an arrest. Thank you. Thank you. I have five seconds left. So I'll step back. All right. Thank you. Mr. Bertrand. Thank you. All right.   Thank you.